```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

PANOLAM INDUS. INT'L, INC.,         :
                                    :
    Plaintiff,                      :
                                    :
    v.                              :  CASE NO. 3:07CV1721(AWT)
                                    :
F & F COMPOSITE GROUP INC., ET AL.  :
                                    :
    Defendants.                     :
```

RULING ON DISCOVERY MOTIONS

Pending before the court are the defendant's Motion to Compel (doc. #122) and Motion for Sanctions (doc. #124). The defendant moves to compel the plaintiff to produce additional documents and to produce certain witnesses for deposition.

1.  Specific Discovery Requests:

As to Request #5, the defendant's motion is granted in part and denied in part. The request seeks documents supporting plaintiff's contention that the RFP line constructed by the defendant "was not capable of producing the three types of products guaranteed." Although it is undisputed that the plaintiff produced many documents in response to this request, the defendant contends that the plaintiff has not fully produced two specific groups of items that are responsive to this request. First, defendant seeks documents relating to any tests of products that show the failure of the product as it came off the line. In addition, defendant seeks documents described during oral argument as rough notes or

1

lab books for the plaintiff's quality control documents.[1] The plaintiff shall make a good faith search and, to the extent it has not already complied with these requests, shall produce these records if they are fairly characterized as quality control documents.

As to Request #34, the defendant's motion is granted in part and denied in part. The request seeks "third-party assessments made of Plaintiff's RFP product." Although the plaintiff has produced responsive documents, the defendant argues that the plaintiff has not fully produced responsive documents relating to the following: MSDS sheets, fire ratings, lab notes, color-matching, resin characteristics, and emails between plaintiff's employees and third parties regarding test results. The defendant's motion is granted insofar as it seeks documents in the possession, custody or control of the plaintiff that have not previously been produced.[2] To the extent the defendant seeks to compel the plaintiff to obtain records not in its possession, custody or control, the motion is denied.

As to Request #35, the defendant's motion is denied.

---

[1] Defense counsel suggested during oral argument that he had seen these lab books at the defendant's facility while conducting a site visit.

[2] The word "control" means more than mere possession. "Control has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand." In re Ski Train Fire of November 11, 2000 Kaprun Aus., MDL Docket #1428 (SAS)(THK), 2006 U.S. Dist. LEXIS 29987 at *13-14 (S.D.N.Y. May 16, 2006).

Plaintiff represents that it has produced all responsive quality control documents. To the extent the defendant seeks to compel production of product samples, the motion is denied because this request seeks only "documents." However, the defendant conceded at oral argument that a sample had been produced.

2.  <u>Depositions of Jeffrey Muller and Robert Muller</u>:

The defendant's motion is withdrawn as to Jeffrey Muller based on the parties' agreement at oral argument that the issue had been resolved.

The defendant seeks to re-depose Robert Muller, the plaintiff's CEO, who was previously deposed for the better part of a business day.[3] The defendant argues that it should be permitted to re-depose Mr. Muller because of additional production and new information that has been obtained since Mr. Muller's deposition. The defendant makes no showing that Mr. Muller has unique information about any of the information allegedly gathered since his deposition or that there is a genuine need for the re-deposition. See <u>Rodriguez v. SLM Corp.</u>, No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344, *5 (D. Conn. Mar. 26, 2010) ("[w]hile there is no *per se* rule barring depositions of top corporate executives, courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has

---

[3] The parties disagree about breaks taken during that deposition, but it appears that Mr. Muller was deposed for about seven hours.

not established that the executive has some unique knowledge pertinent to the issues in the case")(internal citations and quotation marks omitted).  See also Burns v. Bank of Am., No. 03 Civ. 1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, *10 (S.D.N.Y. June 4, 2007)(likelihood that deposition is intended for harassment purposes is one factor to be considered in deciding whether to allow discovery of a corporate executive).

3. Westbrook Documents:

Next, the defendants move to compel the production of records that the parties describe as "the Westbrook documents."  According to plaintiff's counsel, this collection of documents consists of some 15,000 pages.  The court summarizes the long history underlying these documents, as explained by the parties at oral argument.

Bruce Westbrook, an employee of the defendant, had an office at the plaintiff's site during the defendant's construction activities there.  He kept many documents relating to the project in that office.  In late October 2007, the defendant and its employees abruptly left the plaintiff's premises.  Shortly after that departure, the defendant asked employees of the plaintiff to send Mr. Westbrook's documents to defendant's offices in Texas.  The plaintiff complied and shipped 20 or 30 banker's boxes.

The plaintiff later demanded the return of the documents, arguing that the documents belonged to it under the terms of the parties' contract.  In May 2008, the plaintiff filed a Motion for

4

Writ of Replevin (doc. #30) in this court seeking the documents' return. All of this predates the involvement of the undersigned, but the parties explain that the motion was mooted after the defendant relented and returned the documents. The defendant does not, however, concede that the plaintiff owns the Westbrook documents.[4]

Upon receipt of the returned documents, the plaintiff placed the files in Mr. Westbrook's old office. On March 11, 2010, after many disputes and much court intervention, the defendant was permitted to visit the plaintiff's plant for purposes of this litigation. After viewing the RFP line at issue, the defendant's attorney, Mr. Finley, asked to see Mr. Westbrook's old office. Plaintiff believed it was not under any obligation to accede to this request but apparently saw no harm in permitting it.

As plaintiff's counsel related at oral argument, he permitted Mr. Finley to go up ahead unsupervised to take a look at the office. A few minutes later, he walked into the office and found Mr. Finley rifling through documents in a file drawer. Plaintiff's counsel protested, but Mr. Finley insisted that he was entitled to do so because the files contained the Westbrook documents, which he maintains are owned by his client.

---

[4]During the course of many discovery disputes, defense counsel has mentioned that his client wants the files back. However, he has never filed a written motion seeking the return of these documents. To the extent the defendant asks the court to make a determination of ownership at the present time, without briefing or evidence, the court declines that invitation.

The defendant subsequently sought production of the Westbrook documents as responsive to discovery requests previously propagated by the defendant in 2008. Defense counsel represented at oral argument that he had some of the documents scanned while they were in his client's possession, but he did not copy the documents in their entirety before returning them. He explains that he had limited time and resources, and that the files were voluminous and unwieldy. Some of the documents were stapled, some were odd sizes, and some were large schematics. He further argues that, even if he had copied them, his ability to introduce them at trial will be restricted if he does not receive them in production from the plaintiff.

Plaintiff's attorneys, for their part, told the court at oral argument that they were hearing for the first time that defense counsel did not have a complete copy of the Westbrook documents. They represented that defense counsel told them in 2008 that he had scanned all of the documents. The plaintiff does not dispute that the Westbrook documents are relevant and responsive to the defendant's discovery requests. Instead, it argues that defense counsel had the documents in his possession for months and either did or should have copied them then. Plaintiff also complains about defense counsel's conduct during the site visit. Finally, it argues that, even though defense counsel knew about the Westbrook documents all along, he never expressly requested their production until the site visit and indeed led plaintiff's counsel to believe that he already had a complete copy.

All of the plaintiff's objections are well-taken. Defense counsel's conduct during the site visit, if as described, was, at best, discourteous and inappropriate. This is also not the first time that Mr. Finley has belatedly brought up important discovery issues that should have been raised months or years earlier. If he had simply told plaintiff's counsel early on that he needed the Westbrook documents because he had not previously copied them, this dispute might have been resolved long ago without court intervention.

On the other hand, it appears to be undisputed that the Westbrook documents are relevant- indeed, they might include key records in this matter. And while the plaintiff objects as a matter of principle and expense, it has not argued that it would be prejudiced in any way by the production of documents at this stage.

In light of all the foregoing, the court orders the plaintiff to make the Westbrook documents available for inspection by defense counsel at the office of plaintiff's counsel or another neutral location. See Fed. R. Civ. P. 34(a)(1). The defendant shall bear all the costs of inspection. If defense counsel wants copies of all of some of the documents, the parties shall make arrangements for photocopying by a neutral third party, with the defendant bearing all costs for such copying.

4.   30(b)(6) Witnesses:

The defendant's motion to compel the plaintiff's designation of 30(b)(6) witnesses is denied. The plaintiff has designated its

30(b)(6) witnesses. The defendant's Motion for Sanctions is denied. Although plaintiff's counsel admit they were late in designating the witnesses, the defendant failed to consult in good faith with opposing counsel before raising the issue with the court, as required by Local Rule 37(a). If the depositions have not yet been held, they shall be scheduled immediately.

The defendant's request for a brief extension to complete discovery is granted. All discovery shall be completed on or before **January 28, 2011**. Dispositive motions shall be filed on or before **February 28, 2011**.

5.   Conclusion:

As set forth herein, the defendant's Motion to Compel, doc. #122, is GRANTED IN PART AND DENIED IN PART and its Motion for Sanctions, doc. #124, is DENIED. This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Hartford, Connecticut this 3rd day of December, 2010.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge